UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIRAGE WINE + SPIRIT'S, INC., d/b/a MIRAGE WINE & SPIRITS, MARTLET MEADOWS FARM, LLC, d/b/a DOUBLE BUBBLE CAR WASH, PARCELLE LLC, d/b/a PARCELLE ORGANICS, FOGGY BOTTOM BOYS, LLC, and FAMILIA COFFEE, Individually and on Behalf of All Others Similarly Situated,<br><br>                  Plaintiffs,<br><br>  v.<br><br>APPLE INC., VISA INC., and MASTERCARD INCORPORATED,<br><br>                  Defendants. | Case No. 3:23-cv-3942-DWD |

**MEMORANDUM & ORDER**

Before the Court is Defendants' Motion and Brief in Support of a Stay of Discovery ("Motion to Stay"). (Doc. 117). Plaintiffs filed a Response in Opposition, and Defendants filed Replies in Support, of that Motion to Stay. (Doc. 133). For the reasons explained below, the Motion to Stay is **GRANTED in part** and **DENIED in part**.

**I. Background**

In the 59-page Amended Complaint, Plaintiffs generally allege Defendants have "dominated the U.S. market for Point-of-Sale ('POS') Payment Card Network Services since the 1960s." (Doc. 101, pg. 4). Due to that dominance, Defendants have allegedly "long imposed inflated fees on Merchants for use of their POS Transaction Payment networks, and U.S. Merchants have paid fees that significantly exceed fees charged in

other jurisdictions." (Doc. 101, pg. 4). Consequently, Plaintiffs invoke the Sherman Act (15 U.S.C. § 1 *et seq.*) and the Clayton Act (15 U.S.C. § 12 *et seq.*) on behalf of themselves and a class "consisting of Merchants in the United States that used Apple Pay as a method of purchasing Network Services from Visa and Mastercard at the physical POS from December 14, 2019, to the present…and who did not accept Visa or Mastercard Payment Cards…at any time between January 1, 2004 and January 25, 2019, and have not otherwise released the claims asserted in the[] [Amended] Complaint." (Doc. 101, pgs. 5-7, 31, 49-51). Plaintiffs seek monetary relief stemming from the inflated fees paid due to Defendants' "unlawful agreement to restrain trade," including treble damages, costs, and attorney fees. (Doc. 101, pg. 6). Plaintiffs also request injunctive relief. (Doc. 101, pg. 6).

## II. Analysis

Now, Defendants seek a stay of discovery until the Court resolves the pending Motions to Dismiss. (Doc. 117). Notably, the Motions to Dismiss were filed on September 26, 2024. (Docs. 115 & 119; Sealed Docs. 116 & 120). Accordingly, they are not yet ripe for a resolution, as Plaintiffs and Defendants have not had an opportunity to file Responses in Opposition or, if appropriate, Replies in Support, of those Motions to Dismiss.

In support of their request, Defendants argue "the contracts Plaintiffs attempt to recast as a market allocation conspiracy," which were incorporated by reference into the Amended Complaint and attached to the Motions to Dismiss, "do not contain any of the alleged restraints on competition, and indeed expressly refute Plaintiffs' antitrust theory." (Doc. 117, pg. 2). Defendants further argue Plaintiffs failed to allege any facts that indirectly support the existence of the alleged restraints on competition. (Doc. 117,

pg. 2). Therefore, Defendants state Plaintiffs failed to allege the most basic element of a claim under § 1 of the Sherman Act, *i.e.*, an agreement in restraint of trade. (Doc. 117, pg. 2). Since the contracts are properly before the Court, Defendants assert discovery is not necessary for the Court "to determine that the contracts themselves do not contain the alleged restraints" on competition, as to support Plaintiffs' claim. (Doc. 117, pg. 2).

Alternatively, Defendants argue Plaintiffs' claim under § 1 of the Sherman Act fails for lack of standing. (Doc. 117, pg. 2). More specifically, Defendants argue Plaintiffs' theory "depends entirely on a[n] [impermissibly] speculative causal chain," so the Court may resolve the standing issue as a matter of law without discovery. (Doc. 117, pg. 2).

Since a dismissal of the Amended Complaint is proper on either of the above-described bases, Defendants argue the Motions to Dismiss will dispose of the entire action without the need for discovery; as such, a discovery stay will serve the interests of judicial economy, reduce the burdens of litigation, and avoid significant costs. (Doc. 117, pgs. 3, 6-9). Even if the Motions to Dismiss are only partially granted, Defendants argue such a ruling will serve to simplify the issues and narrow the scope of discovery in this case. (Doc. 117, pgs. 3, 6-9). Finally, in this "complex nationwide putative class action," Defendants state Plaintiffs will suffer no prejudice from a short discovery stay because no relief will be afforded on a short-term basis, there is no urgency for relief, access to evidence will not be limited, and, again, no discovery is necessary for Plaintiffs to respond to, or for the Court to resolve, the Motions to Dismiss. (Doc. 117, pgs. 3, 5-6).

In Response, Plaintiffs argue discovery should begin now or, at a minimum, that Defendants should respond to a "narrowly tailored first set of requests for production."

(Doc. 133, pg. 2). Plaintiffs suggest a discovery stay will not resolve the case or simplify the issues; instead, a discovery stay will cause prejudice and increase the burdens of litigation. (Doc. 133, pgs. 2, 5-7). For instance, Plaintiffs would suffer prejudice because "there are not one, but two pre-existing discovery records: (1) the MDL 1720 discovery record concerning Apple; and (2) productions concerning Apple by Defendants to" a Department of Justice ("DOJ") lawsuit against Defendant Visa. *See U.S. v. Visa, Inc.*, No. 24-cv-7214 (S.D.N.Y. Sept. 24, 2024); (Docs. 133, pgs. 3-7). Plaintiffs served requests for the production of those documents, specifically targeting portions that may be produced with minimal burden, so a discovery stay would "actually make this litigation less efficient." (Doc. 133, pg. 4).[1] Plaintiffs insist "[d]iscovery should not be stayed where there are pre-existing discovery records bearing directly on the alleged [competition] restraint in this case that can be immediately produced to Plaintiff[s]." (Doc. 133, pgs. 4-7).

Further, Plaintiffs argue Defendants' bases for a dismissal are meritless. (Doc. 133, pgs. 2, 7-10). For example, Plaintiffs "do not allege the actual unlawful market allocation agreement is within the four corners of the contracts." (Doc. 133, pgs. 2, 7-8). Rather, they argue the contracts merely evince an unlawful market allocation agreement. (Doc. 133, pgs. 2, 7-8). Since Defendants have been "embroiled in antitrust ligation for decades over their networks," Plaintiffs state it is "hardly surprising that they did not reduce an unlawful market allocation agreement to writing within the four corners of their

---

[1] Plaintiffs indicate they have made four requests for production, including: (1) eight deposition transcripts, together with associated exhibits, that were taken in MDL 1720; (2) Defendant Apple's productions in MDL 1720; (3) Defendant Apple's production, if any, in the DOJ lawsuit/investigation; and (4) deposition transcripts, together with associated exhibits, concerning Defendant Apple in the DOJ lawsuit/investigation. (Doc. 133, pg. 7 n. 2).

contracts." (Doc. 133, pg. 2). As such, Plaintiffs reject the notion that the incorporation of the contracts, by reference, into the Amended Complaint, or the attaching of the contracts to the Motions to Dismiss, negates the need for discovery. (Doc. 133, pgs. 3, 7-10). Plaintiffs also argue their claim under § 1 of the Sherman Act is nonspeculative, stating:

> Visa and Mastercard unlawfully bribed Apple to not compete against Visa's and Mastercard's payment card networks. Plaintiffs participate in that restrained market and suffer injury by paying artificially high prices for network services directly to Visa and Mastercard. Plaintiffs allege Visa and Mastercard viewed Apple as a major threat to their business. Through its market leading iPhone, Apple had a large existing base of loyal customers that solved the "chicken and egg" problem that dissuaded potential rivals from launching a payment card network to compete directly with Visa and Mastercard. Apple also has the name recognition, customer loyalty, technical know-how, and cash to compete with Visa and Mastercard.

(Doc. 133, pgs. 3-4, 8-9).

In its Reply, Defendant Mastercard states, *inter alia*, "Plaintiffs have not provided any assurance that their discovery requests pending resolution of the motions to dismiss would be limited to the ones served." (Doc. 148, pg. 3). Therefore, "[a]bsent such assurances, Plaintiffs' argument that pre-motion-to-dismiss discovery will only impose 'minimal burden[s]' upon Defendants is lip service at best." (Doc. 148, pg. 3). Defendant Mastercard suggests it would be burdensome and wasteful to review the voluminous records for relevant documents and to comply with applicable confidentiality requirements only for the Court to dismiss the Amended Complaint. (Doc. 148, pg. 3).

For their part, Defendants Apple and Visa reply that, among other things, the DOJ's claims against Defendant Visa in the Southern District of New York are distinguishable from the claims alleged in this case. (Doc. 149, pgs. 3-4). Further,

Defendants Apple and Visa argue MDL 1720 did not reveal evidence of a conspiracy to fix prices or divide markets. (Doc. 149, pg. 4). Therefore, Defendants Apple and Visa argue there is no reason to believe discovery from the DOJ lawsuit or MDL 1720 will "reveal the inter-network conspiracy alleged here." (Doc. 149, pg. 4). Relatedly, Defendants Apple and Visa, like Defendant Mastercard, are concerned about the relevance, volume, and confidentiality of the documents in MDL 1720. (Doc. 149, pg. 5).

Now, the Court initially notes, under Federal Rule of Civil Procedure 26(b)(1), the scope of discovery, unless otherwise limited, is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and [is] proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Also, the Court has "extensive discretion" to decide discovery matters. *Motorola Solutions, Inc. v. Hytera Comms. Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019); *see also Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995) ("Because the district court is far better situated to pass on discovery matters, [the Seventh Circuit] review[s] its discovery decisions for an abuse of discretion."). Courts may refuse discovery of matters "of 'marginal relevance,' " and it is an assessment of proportionality that is essential. *Motorola Solutions, Inc.*, 365 F. Supp. 3d at 924 (citation to internal quotations omitted); *see also Armour v. Santos*, No. 19-cv-678, 2022 WL 16572006, *2 (S.D. Ill. Nov. 1, 2022)

(recognizing that "relevancy" is broadly construed to encompass matters bearing upon, or reasonably leading to matters bearing upon, issues in the case, and "proportionality" requires a common sense, experiential, careful, and realistic assessment of actual need).

Moreover, the filing of a motion to dismiss does not automatically stay discovery, and the Court is not required to stay discovery pending the resolution of such a motion. *Alexander v. Take-Two Interactive Software, Inc.*, No. 18-cv-966, 2019 WL 2176321, *1 (S.D. Ill. May 20, 2019). However, a court may stay discovery through an exercise of its inherent authority to manage litigation or its authority under Rule 26(c). *U.S. ex. rel. Robinson v. Indiana Univ. Health Inc.*, No. 13-cv-2009, 2015 WL 3961221, *1 (S.D. Ind. June 30, 2015). When considering a stay of discovery, the Court considers whether the stay of discovery would (1) unduly prejudice or tactically disadvantage the nonmovant, (2) simplify the issues in question and streamline the trial, and (3) reduce the burden of litigation on the parties and on the court. *Robinson v. Walgreen Co.*, No. 20-cv-50288, 2021 WL 2153069, *1 (N.D. Ill. June 16, 2021) (citing *Sadler as Tr. of Larry R. Sadler Irrevocable Tr. v. Retail Properties of Am., Inc.*, No. 12-cv-5882, 2013 WL 12333447, *1 (N.D. Ill. Sept. 27, 2013).

Notably, a stay of discovery has been deemed proper, before expensive discovery, when a party raises a potentially dispositive issue. *Alexander*, 2019 WL 2176321 at *1; *see also United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79-80 (1988) (stating it is recognized and appropriate for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters). Also, a plaintiff's standing, as is challenged here, is one such dispositive issue. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) ("Stays are often deemed appropriate

where the motion to dismiss can resolve the case…or where the issue is a threshold one, such as jurisdiction, [citation], standing, [citation], or qualified immunity."); *Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 437 (N.D. Ill. 1996) ("[L]imitations [on the scope or sequence of discovery] can be appropriate when one of the parties raises a potentially dispositive threshold issue such as a challenge to the plaintiff's standing."); (Doc. 119-1, pgs. 7-8, 22-25; Sealed Doc. 20, pgs. 7-8, 22-25). The party seeking the stay of discovery must bear the burden of proof. *See Robinson*, 2021 WL 2153069 at *1 (citing *Indiana State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009)).

Here, in light of the above-cited authorities and Defendants' positions, the Court finds a limited stay of discovery is appropriate until the unripe Motions to Dismiss are resolved. However, the Court also finds it is appropriate for Defendants to respond to Plaintiffs' first requests for production during the discovery stay. In doing so, the Court emphasizes the purported responsive documents were, or are, at issue in other litigation involving Defendants and similar issues, namely, MDL 1720 and the DOJ case involving Defendant Visa. Further, it appears undisputed that certain of those preexisting documents will, at a minimum, be relevant and proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1); *Motorola Solutions, Inc.*, 365 F. Supp. 3d at 924; *Searls*, 64 F.3d at 1068; *Armour*, 2022 WL 16572006 at *2. The Court believes beginning these productions now will allow the parties to productively and efficiently utilize their time during the limited stay of discovery. Therefore, Defendants are **DIRECTED** to respond to Plaintiffs' first requests for production. To the extent a dispute arises in relation to those productions, including as to relevance, proportionality, or confidentiality/privilege, the

parties are **DIRECTED** to fully comply with the Court's Discovery Disputes procedures by meeting, conferring, and reporting on the issues. *See* Case Management Procedures of Judge David W. Dugan, Discovery Disputes, available at https://www.ilsd.uscourts.gov/content/judge-david-w-dugan. In light of the nature of the case, the Court finds this ruling will avoid undue prejudice or tactical disadvantage to any party, allow for the possible simplification or streamlining of the issues for trial, and reduce the burdens of litigation at a time when the Court is resolving potentially dispositive issues. *See Robinson*, 2021 WL 2153069 at *1; *Alexander*, 2019 WL 2176321 at *1; *United States Catholic Conference*, 487 U.S. at 79-80; *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 337; *Builders Ass'n of Greater Chicago*, 170 F.R.D. at 437.

### III. Conclusion

For the reasons explained above, the Motion to Stay is **GRANTED in part** and **DENIED in part**.

**SO ORDERED**.

Dated: October 25, 2024

s/ *David W. Dugan*
―――――――――――――
DAVID W. DUGAN
United States District Judge