# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIRAGE WINE + SPIRITS, INC., d/b/a MIRAGE WINE & SPIRITS, MARTLET MEADOWS FARM, LLC, d/b/a DOUBLE BUBBLE CAR WASH; PARCELLE LLC, d/b/a PARCELLE ORGANICS; FOGGY BOTTOMS BOYS, LLC; and FAMILIA COFFEE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., VISA INC., and MASTERCARD INCORPORATED,<br><br>Defendants. | Case No. 3:23-cv-3942-DWD<br><br>Hon. David W. Dugan<br><br>**REDACTED VERSION** |

# REPLY IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS

## I. PLAINTIFFS FAIL TO ALLEGE A HORIZONTAL AGREEMENT

The Amended Complaint fails to allege that Apple, Visa, and Mastercard entered into any agreement, much less a horizontal *per se* agreement, for Apple to not develop a payment network.

*First*, Plaintiffs pivot from the agreement alleged in the Amended Complaint—the PPAs themselves—to an unpleaded theory of some broader agreement. As Apple explained, the PPAs do not constitute an agreement not to compete, and expressly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. at 12–13. Plaintiffs concede as much, admitting that "Mastercard's PPA does not explicitly restrict Apple's ability to start a rival network." Opp. at 7. Plaintiffs now distance their claim from the PPAs, arguing for the first time that the "anticompetitive scheme" was "not limited to" the PPAs, *id*. at 5, and instead "was broader than what the parties reduced to writing," *id.* at 16. The problem is that the Amended Complaint alleges no facts to support an agreement separate from the PPAs. What did the Defendants agree to, when, and how? Aside from the PPAs—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—the Amended Complaint does not say. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Frantzides v. Northshore Univ. HealthSystem Fac. Prac. Assocs.*, 787 F. Supp. 2d 725, 731 (N.D. Ill. 2011) (dismissing Section 1 claim where "complaint [did] not include 'enough factual matter' to suggest that an agreement was made"); *Sheridan v. Marathon Petroleum Co. LLC*, 530 F.3d 590, 595 (7th Cir. 2008) ("[U]nder . . . *Twombly* . . . plaintiffs' naked assertion of Marathon's 'appreciable economic power'—an empty phrase—cannot save the complaint." (citation omitted)).

Plaintiffs' arguments about circumstantial evidence, Opp. at 16–24, do not save their claims. That "Visa and Mastercard took similar actions . . . at approximately the same time," *id.* at 17, says nothing about a meeting of the minds *with Apple*. The claim that "the PPAs contained materially similar terms,"[1] *id.*, also does not support an inference of conspiracy. *See Twombly*, 550 U.S. at 556–57 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy. . . ."); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 (2d Cir. 2007) (in affirming dismissal of Section 1 claim, reasoning that the existence of "[s]imilar contract terms" does not support a conspiracy; those terms may simply "reflect similar bargaining power and commercial goals (not to mention boilerplate)"). Plaintiffs also fail to rebut Apple's arguments—reflected in their own allegations—that it was economically rational for Apple to build Apple Pay to operate on existing payment networks rather than to develop its own. Mot. at 14–16. In sum, Plaintiffs' allegations are "no more probative of an agreement than of independent self-interested conduct," and should be dismissed. *Wash. Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 831 (N.D. Ill. 2018).

*Second*, none of Plaintiffs' allegations establish that Apple is, or had any actual plans to be, a "horizontal competitor" of Visa or Mastercard. Plaintiffs point to Apple's: (1) "long history of introducing new features"; (2) "large scale of users"; (3) "economic incentive and ability" to build a payment network; (4) "payments-related patents" and acquisitions of "payments-related start-ups"; (5) relationships with large financial institutions; and (6) discussions of a PayPal partnership. Opp. at 12–13. By Plaintiffs' logic, *any* successful company with a connection to payments is a horizontal competitor of Visa and Mastercard. That is not the law. *See Arcell v.*

---

[1] The terms of the PPAs themselves undermine this allegation. *See* ECF Nos. 120-1, 120-2. Indeed, Plaintiffs concede that the core Visa PPA provision of which they complain is not in the Mastercard PPA. *See* Opp. at 6–8.

*Google LLC*, No. 22-cv-02499-RFL, 2024 WL 1090009, at *2 (N.D. Cal. Feb. 5, 2024) (dismissing Section 1 claims alleging Apple agreed to not compete with Google in search where "Plaintiffs offer[ed] no plausible allegations regarding Apple's plans to enter the search market"). Plaintiffs have not plausibly alleged that Apple is a horizontal competitor of Visa and Mastercard.

*Finally*, Plaintiffs' reliance on the DOJ's complaint against Visa is misplaced. That complaint is against Visa only, and the theory that Plaintiffs allege here (a market allocation conspiracy) is different from the DOJ's primary theory that Visa is a monopolist. Here, Plaintiffs must allege that Apple and the payment networks *entered into an agreement* that unreasonably restrained trade. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 833 (7th Cir. 2021). No such allegation is required for the DOJ to plead monopolization. *See JTC Petroleum Co. v. Piasa Motor Fuels, Inc.,* 190 F.3d 775, 780 (7th Cir. 1999) ("[S]ection 2, unlike section 1 . . . does not require an agreement . . . ."). Moreover, the *Visa* matter also involves a different market ("general purpose debit network services") from the one alleged here ("POS Payment Card Network Services"). The *Visa* complaint therefore does not support an inference of conspiracy. *See In re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (a DOJ investigation carried "no weight in pleading an antitrust conspiracy claim").

Plaintiffs' attempt to go beyond the Amended Complaint—to parrot the DOJ's untested allegation that Apple had "discussions with a large debit issuer about building a payment network without Visa or Mastercard's involvement," Opp. at 2, 14—also fails. Not only have Plaintiffs not pleaded it here, but any "discussion" with a "large debit issuer" does not suggest that Apple "had the 'necessary desire, intent, and capability to enter the [payment network] market.'" *Lumber Liquidators, Inc. v. Cabinets To Go, LLC*, 415 F. Supp. 3d 703, 712 (E.D. Va. 2019). A mere "discussion" about potentially developing a product does not create a horizontal competitor.

## II. PLAINTIFFS LACK ANTITRUST STANDING

The Amended Complaint also fails to allege antitrust standing because "the causal connection between [Plaintiffs'] alleged injury and the alleged antitrust violation is tenuous at best." *Fisher v. Aurora Health Care, Inc.*, 558 F. App'x 653, 656 (7th Cir. 2014).

*First*, Plaintiffs' claim that they paid "artificially inflated fees to the Entrenched Networks . . . for using their POS Transaction Payment networks," Opp. at 24, does not establish a sufficiently direct causal chain. Plaintiffs ignore their own admission that interchange fees are paid by *acquirers*, who may sometimes pass on the costs of those fees as a part of the fees the acquirers charge merchants. AC ¶ 29 & Fig. 1. Plaintiffs' reliance on *Interchange Fees V* (Opp. at 25) is misplaced. There, the court analyzed the indirect-purchaser standing bar under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which is "analytically distinct" from the *AGC* "direct-injury doctrine" upon which Apple relies. *Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 828 (7th Cir. 1999); *see also Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 475 (7th Cir. 2002).

*Second*, Plaintiffs fail to rebut Apple's argument that it is too speculative whether Apple would have created a payment network. Mot. at 19–20. Plaintiffs contend it is enough that Apple "was uniquely positioned to enter the [payment network] market" because it had "a large base of users" and could connect them to merchants via the iPhone. Opp. at 26; AC ¶ 64. But again, this is true of every large company in the payments space. Plaintiffs' reliance on allegations that have not been pleaded in this case, and that are still untested in the DOJ action against Visa, do not make the causal chain any less speculative. Plaintiffs' theory of injury still depends on a multi-step, uncertain series of events: (1) Apple would have made the massive investments required to build a payment network; (2) Apple would have succeeded in launching that network; (3) the network would have achieved widespread merchant, acquirer, issuer, and customer adoption;

4

(4) the network's market penetration would be so successful that it would force down the price of interchange fees set by the existing networks; and (5) those cost savings would be passed on by the acquirers to merchants like Plaintiffs. Contrary to Plaintiffs' argument (Opp. at 27), *Bakay v. Apple Inc.* is on point. The fact that the plaintiffs' alleged injury there "did not occur in the market where competition is restrained" was an "independent[]" reason the plaintiffs lacked standing. No. 24-cv-00476-RS, 2024 WL 3381034, at *7 (N.D. Cal. July 11, 2024). Just as in *Bakay*, there is "a gulf of uncertainty" between the supposed agreement for Apple to not develop a payment network and Plaintiffs' alleged payment of inflated interchange fees. *Id.* at *6; *see also City of Oakland v. Oakland Raiders*, 20 F.4th 441, 460 (9th Cir. 2021) (affirming dismissal for lack of antitrust standing given "too many speculative links in the chain").

### III. THE COURT SHOULD DISMISS THIS SUIT WITH PREJUDICE

Because Plaintiffs have amended their Complaint once before, the Court should reject their latest request for leave to amend to add "factual matter revealed in the DOJ action against Visa" and "the discovery" ordered by the Court. Opp. at 28–29. The only new "fact" from the *Visa* case is that Apple supposedly had "discussions with a large debit issuer about building a payment network." *Id.* at 2, 14. That says nothing about an agreement among Apple, Visa, and Mastercard—a critical (and missing) element of Plaintiffs' Section 1 claim. Nor does it cure the impermissibly speculative causal chain Plaintiffs proffer, or suggest that Apple ever had the concrete intention and capability to enter the payment network space. Further, as participants in MDL 1720, Plaintiffs' counsel here took significant discovery into Apple (a third party there), Visa, and Mastercard on the issues in this case. ECF No. 76 at 2 ("[T]he MDL discovery covered the Apple Pay agreement at issue in *Mirage*, including a Rule 30(b)(6) deposition of Apple."). Despite taking that discovery and the passage of years, there was never any suggestion of a conspiracy involving Apple in that case. Dismissal with prejudice is warranted.

DATED:  December 5, 2024	Respectfully submitted,

*/s/ Belinda S Lee*
Belinda S Lee (admitted *pro hac vice*)
Sarah M. Ray (admitted *pro hac vice*)
Ashley M. Bauer (admitted *pro hac vice*)
Aaron T. Chiu (admitted *pro hac vice*)
Alicia R. Jovais (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
belinda.lee@lw.com
sarah.ray@lw.com
ashley.bauer@lw.com
aaron.chiu@lw.com
alicia.jovais@lw.com

Gary Feinerman (IL Bar No. 6206906)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
gary.feinerman@lw.com

*Counsel for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, I caused a true and correct redacted copy of the foregoing to be served on Plaintiffs' counsel of record electronically via CM/ECF. Additionally, I caused a copy of the foregoing sealed version of the filing to be served via electronic mail.

/s/ *Belinda S Lee*
Belinda S Lee